UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.

Michael Allen Voelz,

    Defendant.

MEMORANDUM OPINION
AND ORDER
Crim. No. 19-00257 (02) (MJD)

_____

Katharine T. Buzicky, Assistant United States Attorney, Counsel for Plaintiff.
Eric J. Nelson, Halberg Criminal Defense, Counsel for Defendant.

_____

This matter is before the Court on Defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 210.)

I.    BACKGROUND

On June 10, 2020, Defendant pleaded guilty to Count 1 of the Indictment, possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). On June 2, 2022, the Court sentenced Defendant to a term of imprisonment of 120 months, followed by five years supervised release.

1

To date, Defendant has served approximately 24 months of his 120-month sentence. He is scheduled to be released from the custody of the Bureau of Prisons ("BOP") on January 16, 2030. BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed July 17, 2024).

Defendant's wife, Amanda Letourneau, who was sentenced to five years in prison on the same date Defendant was sentenced, was granted compassionate release by this Court on February 2, 2023 on the joint motion of the Government and Letourneau. (Doc. 204.) The Court granted the motion because Defendant's and Letourneau's minor school-aged son, H.V., was being cared for by Defendants' father and stepmother ("Mr. and Ms. Voelz") while Defendant and Letourneau were incarcerated. In September 2022, Mr. Voelz had a serious farming accident that left him paralyzed on the left side of his body and in need of help to do most tasks of daily living and in need of physical therapy and medical care. Letourneau's sentence was reduced to time served and she began her four-year term of supervised release immediately upon release. She lives near the Voelz family and cares for H.V.

On March 27, 2024, Defendant filed his motion and supporting memorandum of law. (Doc. 210.) On March 28, 2024, the Court ordered the

2

Government to respond to Defendant's motion.  (Doc. 211.)  On April 22, 2024, the Government filed its amended response.[1]  (Doc. 213.)  On the same day, Defense Counsel informed the Court via email that it would be filing a reply and supplementing the record.  The Court responded via email on April 23, 2024 that Defense Counsel's reply was due "on or before April 30, 2024."  All emails referenced herein included both Defense Counsel and Government Counsel.  Defense Counsel did not file his "Supplemental Memorandum in Support of Compassionate Release" and five exhibits until July 7, 2024, nine weeks late.  (Doc. 214.)  The Court will not consider these untimely-filed documents when deciding the instant motion.

## II.   MOTION TO REDUCE SENTENCE

The court may, upon a defendant's motion following exhaustion of administrative remedies or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,

> reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

---

[1] The Government filed an amended response because its original response contained a factual inaccuracy.  (See Doc. 213 at 1 n.1.)

18 U.S.C. § 3582(c)(1)(A)(i).  Defendant has the burden to establish that compassionate release is warranted.  <u>United States v. Avalos Banderas</u>, 39 F.4th 1059, 1062 (8th Cir. 2022) (citation omitted).  There is no dispute that Defendant has exhausted his administrative remedies.  The Sentencing Commission's relevant policy statements setting forth extraordinary and compelling reasons under which relief may be warranted under § 3582 are detailed at U.S.S.G. § 1B1.13(b).

### A.  Extraordinary and Compelling Reasons Under U.S.S.G. § 1B1.13(b)(3)(A), (C)

The United States Sentencing Guidelines state, in pertinent part, that "extraordinary and compelling reasons" due to the family circumstances of the defendant exist when the defendant shows the "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C).  Extraordinary and compelling reasons also exist when the defendant shows there has been "[t]he death or incapacitation of the caregiver of the defendant's minor child. . . ."  U.S.S.G. § 1B1.13(b)(3)(A).

#### 1. The Parties' Arguments

The Court is familiar with Mr. Voelz's accident and his condition as of January 2023 when it granted Letourneau's motion for compassionate release.

4

(Docs. 203, 204.) However, Defendant states that since that time, Mr. Voelz has been making progress in physical therapy but is still at a high risk for falling, is fighting an infection at his surgery site, and is paralyzed on the left side of his face and body. (Doc. 210 at 4.) He asserts that Mr. Voelz needs help transferring from bed to his wheelchair and vise versa; with his everyday tasks of dressing, eating, using the bathroom; and getting in and out of vehicles. (Id.) He also states that Ms. Voelz, who is much smaller than her husband, has had to return to work so that she can maintain health insurance for Mr. Voelz and therefore, she is unable to be with her husband during the day. (Id.)

Defendant further argues that not only is he needed to attend to Mr. Voelz's physical needs, but also to help run the 1,000-acre family farm, the source of income not only for Mr. and Ms. Voelz, but also for "financial assistance for [Defendant's] son." (Id. at 5.) Defendant avers that even before Mr. Voelz's accident, he was largely responsible for raising the 1,000 pigs the family has and therefore, "was heavily relied on in running the farm operations." (Id.)

Defendant argues that his incarceration had already "created uncertainty" around the farm, which has been in the family for over a century, but if he is

unable to return home, the family is at risk of losing the farm because he is the only one who is suited to taking care of his father and the farm.  (Id. at 5-6.)

Defendant also notes that while Letourneau was granted compassionate release to care for H.V., the compassionate release statute does not require that Mr. Voelz be the only available caregiver for H.V.  (Id. at 6.)  Therefore, Defendant argues that the combined circumstances of Mr. Voelz's incapacitation as both Defendant's parent and the caregiver of H.V. create "strong extraordinary and compelling reasons to grant compassionate release."  (Id. (citing U.S.S.G. § 1B1.13(b)(3)(A)-(C)).)

Finally, Defendant argues that his rehabilitation weighs in favor of granting the motion because not only did he work to get sober prior to his sentencing in this case and to be a good role model to the community, but also that he has been a model prisoner during his incarceration, taking advantage of programming and working in the dog training program at Yankton.  (Id. at 6-7.)

The Government responds that while defendants may seek early release based on the incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent, here, Defendant is asking to supplement caregiving already provided by Ms. Voelz and Mr. Voelz's medical

6

team.  (Doc. 213 at 7.)  Moreover, the Government states that Defendant has several siblings and Defendant does not explain why they cannot assist with Mr. Voelz's medical needs.  (Id. n.3.)  In addition, the Government argues that Letourneau was granted compassionate release so she could perform the role of H.V.'s caregiver after Mr. Voelz's accident and there is no reason to believe that H.V. does not now have the steady presence of one parent in his life, so it is unnecessary for Defendant to provide emergency childcare for H.V.  (Id. at 9.)

The Government further asserts that, contrary to his representations, Defendant still poses a significant threat to community safety because, while Defendant claims to have remained sober during his incarceration and claims he is rehabilitated, "conquering methamphetamine addiction is a lifelong process." (Id.)  The Government argues that once Defendant leaves prison, he would benefit from the BOP's normal release process, not from a "sudden release without support or planning."  (Id. at 9-10 (citing PSR ¶ 77 (stating that Defendant used methamphetamine daily since 2013, that he and Letourneau started using methamphetamine together in 2017, and that they used the drug daily until they were arrested in 2019).)

7

## 2. Analysis

Although the Court is not unmoved by Mr. Voelz's situation, Defendant has not provided documentation of Mr. Voelz's ongoing limitations, inability to receive home healthcare or farming help from other sources, or the inability of Defendant's siblings and half-siblings to help on the farm or in other capacities.

In addition, while Defendant now claims to have had a significant role in the family farm, his farm work was not documented in the PSR. The PSR merely states that Defendant was employed by the farm from 2009 to 2019, had unknown income and unknown hours, and that Mr. Voelz never returned a records request regarding Defendant's employment history. (PSR ¶ 84.)

In addition, Letourneau was granted compassionate release to provide H.V. with care to substitute for the care that Mr. Voelz could no longer provide when he became incapacitated. There is no evidence that Letourneau, herself, now is incapacitated. See U.S.S.G. § 1B1.13(b)(3)(A). Therefore, H.V.'s childcare situation is no longer an emergency.

Finally, while the Court continues to commend Defendant on his rehabilitation, his lack of disciplinary issues while incarcerated, and his ability to stay clean and sober while incarcerated, like the Government, the Court notes

that methamphetamine addiction is the most difficult addiction it has watched people try to conquer. Although this, alone, is not a reason to deny a motion for compassionate release, the Court hopes that Defendant will continue to work on his sobriety in his current structured environment.

Accordingly, based on the above discussion, the Court finds that Defendant has not met the high bar set forth in U.S.S.G. § 1B1.13, either based on § (b)(3)(A) or § (b)(3)(C).

**B. 3553(a) Factors**

The Court also finds a sentence reduction would be contrary to the factors set forth in 18 U.S.C. § 3553(a). Although Defendant certainly made a positive turnaround in his life while awaiting sentencing, he committed serious crimes involving drug sales and firearms. He also sold drugs in the presence of H.V.

Defendant is correct that the Court was not unsympathetic to his situation at sentencing and recognized that Defendant's success in getting clean and sober was to be commended. The Court was also interested in knowing if Defendant qualified for safety valve relief, which he did not. The Court still finds Defendant's ability to remain drug-free impressive. However, Defendant did plead guilty to a serious crime involving drug sales and several firearms,

9

although many were hunting rifles, and a pipe bomb.  He also sold drugs around his minor son, which the Court cannot ignore.  The Court told Defendant that he would be angry with himself about the situation he created once the prison doors closed.  (Doc. 189 at 71.)  While the Court may not be quite as concerned as the Government that the stressors Defendant will face if released at this time may jeopardize his sobriety, the Court acknowledges that they would be new to him and do cause the Court some concern, especially given the lack of evidence regarding Defendant's experience working on Mr. Voelz's farm.  Therefore, on the whole, the § 3553(a) factors also weigh against granting Defendant's motion.

### III.   ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Compassionate Release **[Doc No. 210]** is **DENIED.**

Date:  July 22, 2024                    s/Michael J. Davis
                                        Michael J. Davis
                                        United States District Court