UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.

                                    MEMORANDUM OPINION
                                         AND ORDER
                                Crim. No. 19-00257 (02) (MJD)

Michael Allen Voelz,

    Defendant.

_____

Katharine T. Buzicky, Assistant United States Attorney, Counsel for Plaintiff.
Eric J. Nelson, Halberg Criminal Defense, Counsel for Defendant.

_____

       This matter is before the Court on Defendant Michael Allen Voelz's Motion to Vacate his Sentence Pursuant to 28 U.S.C. § 2255. (Doc. 216.)

**I.    BACKGROUND**

       The facts of this case are well-known to the Court and the parties. Therefore, they will only be briefly summarized here.

       During July and August 2019, confidential reliable informants conducted four controlled buys of multiple grams of methamphetamine from Voelz on the property he lived on with his family. On August 28, 2019, law enforcement executed a search warrant on the property and recovered methamphetamine, drug paraphernalia, prerecorded buy money, and a total of 20 firearms, among

1

other things. On October 2, 2019, a three-count Indictment with forfeiture allegations was filed against Voelz and his wife and codefendant, Amanda Letourneau. On June 10, 2020, Voelz pled guilty to Count 1 of the Indictment, possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). On June 2, 2022, the Court sentenced Voelz to 120 months in prison followed by five years supervised release.

At his sentencing hearing, Voelz objected to a 2-level enhancement to his adjusted offense level under U.S.S.G. § 2D1.1(b)(1) because a firearm was possessed. This enhancement rendered Voelz ineligible for safety valve.

After a two-and-one-half hour sentencing hearing, the Court found that under the facts of the case and Eighth Circuit precedent, the enhancement applied and the Court sentenced Voelz to the statutory mandatory minimum, which was a downward variance from his Guideline range. The Eighth Circuit affirmed this Court's sentencing judgment in all regards. United States v. Voelz, 66 F.4th 1155, 1165 (8th Cir. 2023). Voelz is scheduled to be released from the custody of the Bureau of Prisons ("BOP") in November 2029. BOP, Find an Inmate, https://www.bop. gov/inmateloc/ (last accessed October 25, 2024).

On July 22, 2024, the Court denied Voelz's Motion for Compassionate Release.  United States v. Voelz, Crim. No. 19-00257(02) (MJD), 2024 WL 3495796, at *4 (D. Minn. July 22, 2024).  Five days later, Voelz filed this timely § 2255 motion.  For the following reasons, the Court will also deny this motion.

## II.   DISCUSSION

### A.   Voelz's Safety Valve and Second Amendment Claims were Decided by the Eighth Circuit and Cannot be Relitigated

Although he proffers his argument in various ways, Voelz's overriding argument is that the Court should not have denied him the benefit of the safety valve statute, which allows certain drug-trafficking defendants to be sentenced without regard to any statutory mandatory minimum sentence that would otherwise apply to those defendants.  See 18 U.S.C. § 3553(f).  A defendant who "possess[ed] a firearm or other dangerous weapon in connection with the offense" of conviction cannot qualify for safety valve, even if he meets all other statutory requirements, which Voelz does here.  See 18 U.S.C. § 3553(f)(1)-(5).

> "[C]onstructive possession is sufficient to preclude a defendant from receiving safety valve relief under § 5C1.2."  United States v. Jackson, 552 F.3d 908, 910 (8th Cir. 2009).  See generally United States v. Warford, 439 F.3d 836, 844 (8th Cir. 2006) ("A defendant possesses a firearm 'in connection with' an offense if the evidence shows that the weapon 'facilitated or had [the] potential to facilitate' the drug offense." (alteration in original)), quoting United States v. Burke, 91 F.3d 1052, 1053 (8th Cir. 1996).

3

Voelz, 66 F.4th at 1161.

In this case, the Eighth Circuit found that the "20 firearms and pipe bomb" seized in the search of Voelz's property were all near drugs and drug paraphernalia and that at least two of the controlled drug sales occurred in the shed where firearms and pipe bomb were located and where the CIs saw weapons during the controlled purchases, which meant that at a minimum, Voelz "constructively possessed some of these weapons in connection with the drug offense." Id. Thus, the Eighth Circuit held that "sufficient evidence supports the conclusion that Voelz possessed the weapons in connection with the offense" and affirmed this Court's decision that Voelz did not qualify for safety valve relief. Id. at 1161-63.

The Eighth Circuit also rejected Voelz's Second Amendment argument, which he raised on appeal for the first time and which the court therefore reviewed for plain error. Id. at 164-65. Voelz argued that the sentencing enhancement under U.S.S.G. § 2D1.1(b)(1) and safety valve relief under 18 U.S.C. § 3553(f) were unconstitutional after the Supreme Court's decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022). Bruen was decided three weeks after Voelz was sentenced. He argued that he was not yet a convicted felon at the time his property was searched, but was merely a citizen

4

exercising his Second Amendment right to have guns in his home. As the Government succinctly stated, "The Eighth Circuit, applying plain-error review, rejected Voelz's effort to connect the holding in Bruen to safety valve eligibility." (Doc. 220 at 12.)

In fact, the Eighth Circuit held that "Bruen, like Heller, did not address . . . the safety valve statute" or hold "that U.S.S.G. § 2D1.1(b)(1) and 18 U.S.C. § 3553(f) are unconstitutional." Voelz, 66 F.4th at 1163-64. Since nothing in Bruen invalidated the safety valve provision, the Eighth Circuit rejected Voelz's constitutional argument. Id. at 1164-65.

"It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003) (quotation omitted); United States v. Petruk, No. CR 16-285 ADM/LIB, 2021 WL 766699, at *2 (D. Minn. Feb. 26, 2021) (same) (citing Sun Bear v. United States, 644 F.3d 700, 702 (8th Cir. 2011) (en banc)) (citation omitted). The issues Voelz raises were decided on direct appeal and cannot now be relitigated before this Court. Sun Bear, 644 F.3d at 702 (citing Davis v. United States, 417 U.S. 333, 346–47 (1974)).

5

Voelz attempts to persuade the Court that the procedural bar does not apply by basing his arguments on the more recent decision of United States v. Rahimi, in which the Supreme Court held that the prohibition on possession of firearms by one subject to a domestic violence restraining order under 18 U.S.C. § 922(g)(8) does not violate the Second Amendment. 144 S. Ct. 1889, 1897-98 (2024). Voelz relies on language in Rahimi stating that infringement of a person's Second Amendment rights requires a court finding that a person presents "a special danger of misuse" or "a credible threat to the physical safety of another" prior to the infringement. Id. at 1901-02. He argues there was no such prior finding in his case.

Like Heller and Bruen, Rahimi says nothing about the safety valve statute and therefore is not relevant to this case. The Rahimi Court also made it clear that it did not even engage in an exhaustive historical analysis of the Second Amendment. Id. at 1903. Rather, Rahimi merely concluded that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." Id. Rahimi also did "not suggest that the Second Amendment prohibits the enactment of laws

6

banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse" of firearms. Id. at 1901.

Importantly, the Eighth Circuit has long held that drug dealers who possess guns pose such a danger because guns are used to protect drugs, and arguments regarding contrary uses for the guns, such as the ones Voelz made at sentencing, do not prevail. See, e.g., United States v. Close, 518 F.3d 617, 620 (8th Cir. 2008) (jury rejected defendant's testimony that guns found in his bedroom were there to keep them away from his son and that surveillance equipment was put in because of neighborhood burglaries); United States v. Vanover, 630 F.3d 1108, 1118 (8th Cir. 2011) (detective testified that drug dealers commonly use firearms for intimidation and protection and court found that defendant "was more likely to possess a firearm and, as a consequence, use a firearm to protect his methamphetamine, cash, and family"). Rahimi, itself, upheld a law restricting gun ownership by people who posed a risk to others. Voelz, by being a drug dealer in possession of a firearm, is a person who posed such a risk.

If the Court were to adopt Voelz's reading of the law, every first-time offender would get one "free pass" to possess a firearm in commission of a drug crime and avoid a sentencing enhancement. This makes no logical or legal sense,

especially when a defendant enters a guilty plea, which "is an admission of guilt that waives all non-jurisdictional defects and defenses." United States v. Frook, 616 F.3d 773, 775 (8th Cir. 2010). Even if Voelz had not pled guilty, his free pass argument is meritless. A defendant who possesses large quantities of methamphetamine with the intent to distribute and possesses a firearm or other dangerous weapon in connection with the offense is simply in a different category from a defendant who merely possesses large quantities of methamphetamine with the intent to distribute. The potential for someone to get injured in the former situation versus the latter situation is so obvious discussion is unnecessary. See, e.g., United States v. Linson, 276 F.3d 1017, 1019 (8th Cir. 2002) ("The likelihood of violence greatly increases when a firearm is present in connection with illegal drug possession."); United States v. Newell, 596 F.3d 876, 880 (8th Cir. 2010) (same); United States v. Claxton, 276 F.3d 420, 423 (8th Cir. 2002) ("There is a close and well-known connection between firearms and drugs. . . . Firearms are known tools of the trade of narcotics dealing because of the dangers inherent in that line of work.") (ellipses in original); United States v. Jefferson, 815 F. App'x 87, 89 (8th Cir. 2020) (stating that"[f]irearms are the tools

of the drug trade providing protection and intimidation") (quoting Linson, 276 F.3d at 1019).

The Court's independent research has not revealed a decision from any United States Court that has cited Rahimi and "safety valve" in the same opinion. Three cases have cited Rahimi and U.S.S.G. § 2D1.1(b)(1), but only one of those cases is relevant. See United States v. Witherspoon, No. 6:23-CR-39-REW-HAI-1, 2024 WL 4819433, at *6 n.5 (E.D. Ky. Nov. 18, 2024) (stating, "Laws 'barring people from misusing weapons to harm or menace others,' referenced in United States v. Rahimi, 144 S. Ct. 1889, 1899 (2024), surely supply an analog for a law barring a drug trafficker from possessing a firearm to further that crime. If the law can disarm 'not only brigands and highwaymen,' the Court expects a trafficker armed to empower the crime could face the same prohibition") (addressing challenge to constitutionality of 18 U.S.C. § 924(c)); see also United States v. Sheppard, No. 3:20-CR-201-RJC-DCK-1, 2024 WL 3647906, at *6 (W.D.N.C. Aug. 1, 2024) (merely noting that defendant in the case relied on the Fifth Circuit Rahimi decision now reversed by the Sup. Ct.); Tisdale v. United States, No. 23-CR-6172-FPG, 2024 WL 4167827, at *1-2 (W.D.N.Y. Sept. 12, 2024) (holding that although petitioner argued there was insufficient evidence to

support increase for dangerous weapon under § 2D1.1(b)(1), petitioner conceded that police found three firearms at his club and in <u>Rahimi</u>, the Sup. Ct. favorably quoted <u>Heller's</u> statement on firearms restrictions for felons).

Accordingly, Voelz has not demonstrated "that reasonable jurists would find the [Court's] assessment of the constitutional claims debatable or wrong" and the Court declines to issue a certificate of appealability on this issue. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).[1]

### B. Voelz's Safety Valve Claim is not Cognizable Under § 2255

Voelz's eligibility for safety valve is a matter of Guidelines interpretation and therefore, is not cognizable under § 2255. Although safety valve is a statute, it requires courts to apply the Sentencing Guidelines to a defendant's conduct. <u>See</u> 18 U.S.C. § 3553(f). <u>Sun Bear</u> is instructive. 644 F.3d at 704-06.

> [T]he permissible scope of a § 2255 collateral attack on a final conviction or sentence is severely limited; an error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.
> . . .
> . . . [T]his court and our sister circuits have consistently held that ordinary questions of guideline interpretation falling short of the

---

[1] Voelz has not requested a certificate of appealability, should he not prevail on his motion. In an abundance of caution, the Court proceeds as if he has requested one.

10

>miscarriage of justice standard do not present a proper section 2255 claim. Therefore, such questions may not be re-litigated under § 2255.

Id. at 704 (citations omitted).

Applying this standard, the Sun Bear en banc court reversed a panel decision that found the miscarriage of justice exception applied in the case because a post-conviction change in the law rendered the defendant's sentence unlawful. Id. at 705. The Eighth Circuit held that the defendant's sentence was not unlawful because it was "well-within the statutory maximum authorized for the offense" and that an "unlawful or illegal sentence is one imposed without, or in excess of, statutory authority." Id. The court reasoned that the same sentence could have been reimposed were the defendant granted the § 2255 relief he requested and therefore, no miscarriage of justice was at issue in the case. Id.

The same is true here. No miscarriage of justice has occurred in this case because Voelz's 120-month sentence is within the statutory range for his offense. (Doc. 113 at 1 (120 months is the statutory mandatory minimum sentence).) Voelz's motion is denied on this basis.

### C. Safety Valve is a Benefit Granted to Certain Defendants and Failure to Qualify is not a "Punishment"

Voelz argues that the Court unfairly punished him for exercising his Second Amendment rights when it found him ineligible for safety valve status. (Doc. 216 at 6.) The Court disagrees. As discussed above, to qualify for safety valve, Voelz had to satisfy a list of statutory criteria. He failed to do so. For decades, the Eighth Circuit has described safety valve as a "benefit," including in Voelz's own case. See, e.g., Voelz, 66 F.4th at 1160 ("The statute creating the safety valve provides that it is the district court which is to determine at sentencing whether the requirements for the benefit have been met. . . .") (quotation omitted); United States v. Morales-Uribe, 470 F.3d 1282, 1286 (8th Cir. 2006) ("safety-valve eligibility provided [the defendant] the additional benefit of reducing his advisory sentencing guidelines range"); United States v. Weekly, 118 F.3d 576, 580 (8th Cir. 1997). Thus, the Court reiterates that safety valve is a benefit available to certain defendants and denial of safety valve is not a punishment for Voelz having exercised his Second Amendment rights. Voelz's motion is denied on this basis.

### D.   Certificate of Appealability

With regard to the Court's procedural rulings, the Court concludes that no "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right;" nor would "jurists of reason . . . find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.  With regard to the Court's decision on the merits, it concludes that no "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id.  Therefore, the Court denies a Certificate of Appealability in this case.

### III.  ORDER

Based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1. Defendant Michael Allen Voelz's Motion to Vacate his Sentence Pursuant to 28 U.S.C. § 2255 **[Doc. 216]** is **DENIED**;

2. Defendant's Request for a Resentencing Hearing is **DENIED as moot**; and

3. No Certificate of Appealability shall issue.

Date:   January 21, 2025                         s/Michael J. Davis
                                                 Michael J. Davis
                                                 United States District Court

13